S03A1669. MOODY v. THE STATE.

(594 SE2d 350)

HINES, Justice.

Tommy Carlton Moody appeals from his conviction for the malice murder of Rebecca Norman.[1] For the reasons that follow, we affirm.

---

[1] Norman died on March 6, 1994. On August 1, 1994, a Troup County grand jury

Construed to support the verdict, the evidence showed that on Monday, March 7, 1994, Norman's relatives reported to the police that she had been missing for two days. Police, as well as her relatives and neighbors, conducted a search. On Tuesday, March 8, 1994, Norman's shoe was found near a vacant, partially-burned house. Later that day, her body was discovered in the woods approximately 300 to 400 yards from where the shoe had been found. Her body was shoeless and partially buried. Norman's sweater was pulled over her face. Moody's broken-down car was 213 feet from the body, parked behind the house of Moody's sister. Norman died of ligature strangulation and her body had been dragged, apparently by the feet, from Moody's car to the spot where her body was discovered. Medical evidence suggested that her death likely occurred on Sunday, March 6, 1994.

Norman lived with her boyfriend, Lawrence Griffin. Nonetheless, she maintained a sexual relationship with Moody. On the morning of Sunday, March 6, 1994, Norman and Moody were seen together in the neighborhood where both lived. That afternoon, after they parted, Moody attempted to contact Norman to arrange a meeting that evening at his car; Moody often met with her in his car, and he often slept there as well. At 7:30 p.m., while at the home of a friend, Norman received a telephone call from Moody; she left her friend's home shortly thereafter.

On Monday, March 7, 1994, Moody was at the partially-burned house and told Griffin that he did not have a relationship with Norman, but he knew that some people believed that he did, and that if anything happened to Norman, he knew someone would immediately say that he had "done something" to her. The body was found the next day, and on the night of Wednesday, March 9, 1994, police found Moody walking along the side of a road in the rain. Moody stated that his car had broken down and that he had been in the woods. When asked his name, he identified himself and asked if police were looking for him. He was read his rights and taken to the police station where he was questioned by an officer. The following day, officers questioned Moody again, and he told them that he had slept in his car Sunday evening and had been more drunk than usual. He also stated that he might have "done it" if she woke him and he was mad. The interviews were not recorded.

indicted Moody for malice murder. Moody was tried before a jury September 6-9, 1994, was found guilty, and on September 9, 1994, was sentenced to life in prison. Moody moved for a new trial on September 12, 1994. New appellate counsel was appointed on May 5, 1995, and Moody's motion for new trial was amended on January 16, 2003. The motion as amended was denied on April 10, 2003. Moody's notice of appeal was filed on May 6, 2003, the appeal was docketed in this Court on July 28, 2003, and submitted for decision on September 22, 2003.

Two years before Norman's death, Moody fired a sawed-off shotgun into the bedroom Griffin and Norman shared, as they were sleeping. Moody pled guilty to possession of a firearm and reckless conduct as a result of this act.

1. The jury was authorized to find Moody guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, the court denied Moody's motion to suppress certain testimony about prior difficulties between Moody and Norman. "[E]vidence of prior difficulties is relevant to the relationship between the victim and the defendant, and admissible to show the defendant's motive, intent, and bent of mind in committing the act against the victim. [Cit.]" *Edge v. State*, 275 Ga. 311, 313 (4) (567 SE2d 1) (2002).

Moody notes that there was testimony that he loved Norman and spoke of marriage to her. But, there was also evidence that Moody was obsessed with Norman and extremely jealous of her involvement with anyone else. Evidence of prior difficulties between Moody and Norman, particularly Moody's act of discharging a shotgun into the bedroom in which Norman slept,[2] showed Moody's relationship with, and attitude towards, Norman, and it was not error for the trial court to admit such evidence. Id.

3. The State introduced evidence of three statements Moody made to police. Moody contends that all three statements should be excluded as the fruit of an illegal, warrantless arrest. See *Taylor v. Alabama*, 457 U. S. 687 (102 SC 2664, 73 LE2d 314) (1982). But, Moody did not argue to the trial court that his arrest was illegal; all he argued was that the statements were not voluntarily made. Thus, there is no ruling regarding probable cause for the arrest which this Court can review on appeal. Compare *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986). In any event, the trial court was correct in determining that the first statement consists simply of remarks which Moody made to the officer who met him on the road; he was not then under arrest. See *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000).

The later two, custodial statements, were made after *Miranda*[3] warnings were given to, and waived by, Moody. The second statement began at 11:32 p.m., Wednesday, March 9, 1994, and lasted two to three hours. As to this statement, Moody now contends that he was subject to repeated interrogation, was wet and sleep-deprived, and was under the influence of alcohol. However, Moody testified at the

---

[2] This is the only evidence of which Moody specifically complains.

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

*Jackson-Denno* hearing,[4] and did not produce any evidence to support such claims. Rather, he testified that he changed clothes after arriving at the police station, was not threatened, was advised of his rights, and was not intoxicated; he had consumed a quart of beer prior to his arrest, but further testified that a quart of beer was insufficient to cause him to become intoxicated. The interviewing officer testified that Moody did not appear to be intoxicated, understood the questions asked of him, appeared clearheaded, and waived his rights.

As to the third statement, which took place at 1:00 p.m. the next day, Moody makes the same contentions he makes regarding the second statement. Additionally, he testified that during this interview, an officer told him that he could receive a lesser sentence if he told them that he killed Norman. However, both the officer who Moody claimed told him this, and the other officer participating in the interview, denied any such offer of leniency was made or suggested. At the end of this interview, Moody stated that if Norman woke him and made him mad, he may have been the one who hurt her, but he did not mean to.

After the *Jackson-Denno* hearing, the trial court found that Moody freely and voluntarily made these statements after waiving his rights, and that he made them free of threats or other improper conduct on the part of the law enforcement officers. "A trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal unless clearly erroneous." *Edge*, supra at 312 (2). The evidence amply supports the trial court's findings.

4. Gaddy, a police officer, testified about what Norman told him shortly after Moody shot into the bedroom in which she was sleeping. This was admitted under the necessity exception to the bar on hearsay testimony.[5] See OCGA § 24-3-1 (b). The State urges that Norman's statement was admissible under the exception because it was clothed in circumstances indicating its trustworthiness. See *Parks v. State*, 275 Ga. 320, 322 (2) (565 SE2d 447) (2002). However, the Supreme Court of the United States has recently issued an opinion which renders the analysis advanced by the State irrelevant. *Crawford v. Washington*, ___ U. S. ___ (124 SC 1354, 158 LE2d 177) (2004).

In *Crawford*, the Supreme Court held that the right of confrontation found in the Sixth Amendment to the United States Constitution requires that "testimonial" hearsay in a criminal prosecution is admissible when the declarant is unavailable only if the defendant

---

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[5] The officer's testimony was presented as a summary of what Norman and Griffin told him at the scene; Griffin testified at trial.

had a prior opportunity to cross-examine the declarant about the hearsay statement.[6] Moody had no such opportunity. Accordingly, the admission of this testimony was error.

But, the admission of this evidence was harmless; there is no reasonable possibility that it contributed to the conviction. *Yancey v. State*, 275 Ga. 550, 557-558 (3) (570 SE2d 269) (2002). Griffin testified, on his own knowledge and without objection, that Moody shot into the house. Further, Moody pled guilty to charges of possession of a sawed-off shotgun and reckless conduct in connection with the incident. Thus, the erroneously admitted evidence was cumulative of admissible evidence and did not touch upon the central issue of the case. See *Myers v. State*, 275 Ga. 709, 713 (2) (572 SE2d 606) (2002).[7]

5. Over Moody's objection, the State introduced several photographs of Norman's body, taken where it was found. Examination of the photographs shows that the trial court did not abuse its discretion in finding that they are not overly gruesome, and that any prejudice to Moody that the photographs might have caused was outweighed by their probative value. See *Dean v. State*, 273 Ga. 806, 807 (2) (546 SE2d 499) (2001).

Moody also asserts that the photographs were duplicative. Assuming that this argument was properly presented to the trial court, we note that they generally detail different injuries Norman received. See *Wyatt v. State*, 272 Ga. 490, 492 (3) (532 SE2d 390) (2000). Additionally, the photographs are material, relevant, and admissible to show the extent and nature of Norman's wounds, and the time of death, even if they are to some degree redundant. *Floyd v. State*, 272 Ga. 65, 68 (4) (525 SE2d 683) (2000).

6. Moody asserts that trial counsel was ineffective in several regards. To prevail on this claim, he must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Prior to trial, counsel moved for funds to hire an investigator; he later abandoned this motion. Moody contends this action, and counsel's failure to seek an independent analysis of scientific evi-

---

[6] The Court specifically noted that it left the term "testimonial" without a comprehensive definition. 124 SC at 1374. However, the Court stated that the term certainly applies to statements made in a police interrogation, and it appears that the term encompasses the type of field investigation of witnesses at issue here.

[7] Moody also urges that the same evidence put forth by Gaddy could have been put forth by the testimony of Griffin. However, he did not argue this point to the trial court, and therefore cannot now claim that this other evidence available to the State was more probative than Gaddy's testimony. See *Parks*, supra; *Pye v. State*, 269 Ga. 779, 787 (14) (505 SE2d 4) (1998).

dence, was ineffective legal assistance. But, Moody has not offered what exculpatory evidence an investigator might have found, or what any independent scientific analysis would have revealed, and thus has not demonstrated that he was prejudiced by counsel's action in these regards. See *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

(b) In a pretrial hearing, Moody requested any information the State had about the criminal records of its witnesses. The prosecutor stated that she was not aware of any such records. Nonetheless, Moody contends his counsel was ineffective for failing to secure an order making such records available for impeachment purposes. Assuming that Moody was entitled to information beyond that which he received, he has failed to show that any of the State's witnesses had criminal records, and thus fails to demonstrate that his defense was prejudiced by what he contends was counsel's deficiency. Id.

(c) Moody contends that trial counsel should have insisted that a transcript be made of opening statements and closing arguments, see OCGA § 17-8-5 (a); *State v. Graham*, 246 Ga. 341, 342-343 (271 SE2d 627) (1980), and that the failure to do so has prevented him from asserting error based upon remarks made by the prosecutor. However, he does not state what remarks were improper, and made no effort to have any such remarks reconstructed for use in his motion for new trial. See OCGA § 5-6-41. Without a record, Moody cannot establish that the failure to record opening statements and closing arguments was prejudicial to his defense. *Domingues*, supra.

(d) Moody's parole officer was present for the third statement Moody made to the police. He contends that trial counsel should have called his parole officer to testify concerning what actually occurred during that interview, but he fails to show what the testimony of his parole officer would have been, and therefore has not shown that trial counsel's failure to introduce such evidence prejudiced his defense. Id.

(e) Moody did not testify at trial. He now contends that in failing to call him to testify, trial counsel was ineffective. But, prior to the presentation of evidence on Moody's behalf, Moody stated on the record that, after consultation with counsel, he did not wish to testify, and that he understood that the final decision as to whether or not to do so was his alone. Thus, there is no error in denying the claim of ineffective assistance of counsel on this basis. See *Doctor v. State*, 275 Ga. 612, 615 (5) (d) (571 SE2d 347) (2002).

7. Moody contends that a new trial should have been granted because of newly discovered evidence.

As set forth in *Timberlake* [*v. State*, 246 Ga. 488 (1) (271 SE2d 792) (1980)], on motion for a new trial based on newly

discovered evidence, it is incumbent that the movant satisfy the court (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness is attached to the motion or its absence accounted for; and (6) that the new evidence does not operate solely to impeach the credibility of a witness. Failure to show one requirement is sufficient to deny a motion for new trial.

*Young v. State*, 269 Ga. 490, 492, fn. 5 (500 SE2d 583) (1998). "Implicit in these six requirements is that the newly discovered evidence must be admissible as evidence." *Timberlake*, supra at 491 (1).

The newly discovered evidence to which Moody refers is the July 1997 guilty plea of Charlie Frank Blount to the murder and armed robbery of Willie Louise Allison, in an apparent burglary of her home that occurred in July 1996; Allison was beaten with a nightstick and stabbed.[8] Moody contends that this evidence would probably produce a different verdict because during an interview with the police, he was asked whether he knew of any involvement Norman had with a man named Larry Blount. The State argues that this evidence would not have been admissible in any trial of Moody. We need not determine whether this is so, because Moody has failed to demonstrate that the evidence was so material to his case that it would probably produce a different verdict. Moody produced no evidence that Charlie Frank Blount ever used the name Larry, no evidence that Charlie Frank Blount had any connection with Norman, no evidence that Norman had any connection with Allison, and no evidence that the two murders had any similarity in terms of method, motive, or place of commission. The officer who investigated Norman's death testified that there was never any suspicion of anyone named Larry Blount or Charlie Frank Blount, and that no such person had any connection with the investigation. The trial court did not err in denying the motion for new trial based on newly discovered evidence.

8. In a final enumeration of error, counsel for Moody has presented what counsel contends is an argument prepared by Moody, pro se, which counsel has simply typed verbatim. Moody does not have the right to be represented by counsel on appeal, and simultaneously to represent himself, see *Smith v. State*, 267 Ga. 372, 378 (12) (477 SE2d 827) (1996), and this fact is not changed by counsel's typing Moody's enumeration for him. In any event, all arguments

---

[8] Blount was also indicted on two counts of burglary, to which he did not plead guilty.

advanced in this enumeration are either repetitive of those prepared by counsel and already addressed, or they rely upon alleged factual statements that are contradicted by the record.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 22, 2004.

*Duncan, Thomasson, Leonard & Shattuck, Wesley T. Leonard*, for appellant.

*Peter J. Skandalakis, District Attorney, Monique F. Kirby, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.