### S04A1258. ROSS v. THE STATE.
(603 SE2d 268)

HINES, Justice.

Following the denial of his motion for new trial as amended, Byron Lowell Ross appeals his conviction for malice murder in connection with the fatal stabbing of Thomas Amoson. He challenges the admission of certain evidence under the necessity exception to hearsay, and the trial court's charge to the jury on justification. Finding the challenges to be unavailing, we affirm.[1]

The evidence construed in favor of the verdicts established that Ross and his girlfriend, Carise Fry, lived in a tent in the woods near the M.U.S.T. Ministries Center in Cobb County. On the afternoon of February 24, 2003, Ross and Fry drank alcohol at their campsite with two homeless men, Hoyt "Pops" Barton and Thomas Amoson. The four became drunk and Barton passed out.

Amoson made some remarks about Fry that made Ross angry. Ross was in a drunken rage, and the two men argued. Ross went into his tent and got a brown-handled steak knife. Amoson had a lock-blade black-handled knife. Ross cut himself across his chest, telling Amoson, "If you want some of me, come and get it." Ross told Amoson to leave, and Amoson put his knife down and turned to leave the campsite. Ross followed Amoson, "jumped" him, and stabbed him in

---

[1] The stabbing occurred on February 24, 2003. On July 11, 2003, a Cobb County grand jury indicted Ross for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. Ross was tried before a jury October 14-16, 2003, and found guilty of all charges. On October 16, 2003, he was sentenced to life imprisonment for malice murder. The felony murder stood vacated by operation of law, and the trial court found that the aggravated assault merged for the purpose of sentencing. Ross filed a motion for new trial on October 17, 2003, and an amendment to the motion for new trial on December 23, 2003; the motion for new trial as amended was denied on January 9, 2004. A notice of appeal was filed on January 20, 2004, and the case was docketed in this Court on April 2, 2004. The appeal was submitted for decision on May 24, 2004.

the back and in the chest. Ross dragged Amoson's body back into the campsite area, placed him on a pile of garbage, and covered him with a blanket. Ross planned to drag Amoson's body down to the creek and let it rot there, but Ross passed out before he could carry out his plan.

At about 11:50 a.m. the next morning, Ross went to the M.U.S.T. Ministries Center to speak with Adams, the Director of Facilities. Ross told Adams that he had killed Amoson, and Adams called the police. Ross led the police to the location of Amoson's body. He also showed them Amoson's black-handled knife, which was embedded in the ground, and Ross's jeans within which was a toiletry kit containing Amoson's wallet. There was a large pool of blood near Ross's tent and blood on vegetation along the trail to the trash pile.

Initially, Ross told police that he stabbed Amoson while they were "tussling." But Amoson's stab wounds were not consistent with him being stabbed during a fight. Also, Amoson did not have any defensive wounds or other evidence of his having been in a fight at the time of his death. Likewise, Ross's body did not show any evidence that he had been in a fight. The only wound on Ross was his self-inflicted chest laceration.

1. The evidence at trial was sufficient to enable a rational trier of fact to find Ross guilty beyond a reasonable doubt of the malice murder of Thomas Amoson. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Fry was deceased by the time of trial. Her audiotaped interview with police approximately two days after the murder was admitted into evidence under the necessity exception to the admission of hearsay. See OCGA § 24-3-1 (b). In her statement, Fry told police: Ross was "hot-headed" and that he had been drinking heavily; Ross became angry after Amoson called her names; upon seeing Ross's knife, Amoson walked away but Ross chased him and stabbed him in the back; there was "no damn reason" for Ross to have killed Amoson; Ross ultimately admitted to Fry that he killed Amoson because he was "tired of his mouth."

Ross contends that the trial court erred by admitting Fry's statement under the necessity exception because the surrounding circumstances do not support a finding of reliability or trustworthiness and because admission of the evidence violated his rights of confrontation under the State and Federal Constitutions.

The assertion regarding the reliability and trustworthiness of Fry's statement is irrelevant under the recent opinion of the Supreme Court of the United States in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). *Moody v. State*, 277 Ga. 676, 679 (4) (594 SE2d 350) (2004).

In *Crawford*, the Supreme Court held that the right of

confrontation found in the Sixth Amendment to the United States Constitution requires that "testimonial" hearsay in a criminal prosecution is admissible when the declarant is unavailable only if the defendant had a prior opportunity to cross-examine the declarant about the hearsay statement.

*Moody* at 679-680 (4). The term "testimonial" plainly applies to statements made to police during the investigation of a witness as in this case. Id. at 680, n. 6. Consequently, inasmuch as Ross did not have the opportunity to cross-examine Fry about her statement to police, admission of the statement was error. Id. at 680. However, its admission must be deemed harmless because there is no reasonable possibility that it contributed to the verdict. *Moody* at 680 (4), citing *Yancey v. State*, 275 Ga. 550, 557-558 (3) (570 SE2d 269) (2002).

Fry's statement inculpating Ross echoed Ross's own testimony at trial. Ross testified that when he gets mad, he takes out a knife and cuts his own chest, but "only if I'm drinking I'll do it." He further testified that he was brought up not to back down in a confrontation, and that he did not back down in the incident with Amoson. He also admitted that he told Fry that "dynamite comes in small packages," that he was in a drunken rage at the time of the stabbing, that he had killed Amoson, in part, because Amoson was "running his mouth," and that he had retrieved his knife as Amoson was walking away. Thus, Ross's trial testimony itself demonstrates that he killed Amoson without justification. Moreover, the physical evidence belied Ross's claim that he stabbed Amoson in self-defense.

Thus, Fry's statement was merely cumulative of other admissible evidence, and its admission does not provide a basis to reverse Ross's conviction. *Moody v. State*, supra at 680 (4). See also *Vaughns v. State*, 274 Ga. 13, 15 (3) (549 SE2d 86) (2001).

3. Ross also contends that the trial court erred by not instructing the jury on the justification defense in relation to the felony murder and aggravated assault counts, and that the jury instructions as a whole were erroneous and confusing such that a new trial is warranted. But the contentions are without merit.

The trial court gave a general instruction on justification and self-defense. The fact that it followed the trial court's instruction on malice murder in no way limited the jury's consideration of Ross's affirmative defense to the malice murder charge; there was nothing in the instruction which would mislead or preclude the jury from determining whether Ross acted with justification in regard to the felony murder or aggravated assault charges. See *Holmes v. State*, 273 Ga. 644, 646 (3) (543 SE2d 688) (2001); *Alexander v. State*, 259 Ga. 440 (2) (383 SE2d 877) (1989). On the contrary, a fair reading of the court's instruction clearly shows that the justification defense

applied not only to the malice murder but to the felony murder and aggravated assault charges as well. *Holmes* at 646 (3); *Alexander* at 440 (2).

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in Division 1 and in the judgment.*

DECIDED SEPTEMBER 27, 2004.

*David C. Butler*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, C. Lance Cross, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Raina Nadler, Assistant Attorney General*, for appellee.