## A06A0704. WINDHAM v. THE STATE.
### (629 SE2d 837)

PHIPPS, Judge.

Bernard Roberts was shot to death on a Savannah street. In connection with the shooting, a jury found Malcolm Xavier Windham guilty of voluntary manslaughter and possession of a firearm during the commission of a crime. He appeals, arguing that the evidence was insufficient to support his convictions because he was clearly acting in defense of himself and his co-defendant, Lavone Rivers. We reject Windham's argument and affirm.

In reviewing the sufficiency of the evidence to support a criminal conviction, we examine the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We neither weigh the evidence nor evaluate the credibility

of witnesses; we merely determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

Johnny Early testified that on the afternoon of the shooting, he drove to Monteco Scott's house on Newcastle Street to talk to Scott. Scott was busy talking to two other people, so Early parked across the street, got out of his car, and waited for Scott to finish. While Early was waiting, Roberts pulled up in another car, parked nearby, and walked over to talk with him. A Ford Expedition drove up and "[s]omebody said something out the truck." The truck moved on, then parked down the street and Rivers stepped out. Roberts told Early, "I'm going to have to kill this joker."

Rivers approached Early and Roberts in an angry manner. Rivers and Roberts began throwing punches at each other, and Early tried to break up the fight. Then Rivers pulled out a pistol and tried to hit Roberts with it. Roberts was holding his hands up "in a defense mode." Early fled. As Early rounded the corner of a nearby house, he looked back and saw Rivers fire the pistol, then heard six or seven more shots. When Early emerged from behind the house, he found Roberts in a nearby alley, barely breathing.

Cynthia Wright testified that she rode with Early to Scott's house, but stayed inside the car. Wright saw Roberts join Early, then saw the Expedition drive past. She saw Rivers emerge from the Expedition and approach Early and Roberts angrily. According to Wright, Rivers started the fight with Roberts, and Early tried to break it up. Then two more men emerged from the Expedition and ran toward the melee. Rivers pulled out a gun and Early fled. Roberts tripped and fell, then Rivers pointed the gun down at him and fired. Wright ducked and covered herself, then heard more shots. After the shots stopped, she sat up and saw the men who had come from the Expedition run back toward their vehicle and speed off. Wright later identified Windham from a photographic lineup as one of the men who had exited the Expedition and run toward the fight.

Alamami Williams testified that on the afternoon of the shooting, he was working on a rental house that he owned on Newcastle Street. He walked out to his truck and saw two men — later identified as Rivers and Roberts — fighting about 50 feet down the street. Rivers pulled a gun from his pants and hit Roberts on the head with it as two other men ran toward the fight. Williams heard multiple shots from more than one gun. Roberts ducked to avoid Rivers's gun, then ran toward a lane. Williams never saw a gun in Roberts's hand.

---

[1] *Linzy v. State*, 277 Ga. App. 673 (627 SE2d 411) (2006).

Kenneth Starnes testified that, at the time of the shooting, he and a co-worker were appraising Scott's house. As they were finishing, Starnes heard a "skirmish" outside and saw "three gentlemen in a scuffle." One man — later identified as Rivers — pulled a gun and fired shots, and "the victim" ran. A different "thinner gentleman" then chased the victim and shot at him from a distance of five to eight feet. Rivers and the thinner man then fled. Starnes never saw the victim with a gun.

Star Corporal John Cain of the Savannah-Chatham Metropolitan Police Department testified that he responded to the shooting and found Roberts dead in an alley off Newcastle Street.

The day after the shooting, Rivers and Windham went to the police station and gave statements. Windham said that he and Rivers had been driving on Newcastle Street the day before when Roberts flagged them down. Rivers parked the car and got out, while Windham stayed inside. Windham saw "tussling." He looked out the window and saw that Roberts had

> pulled out a gun. When I seen the gun, I got out the car and was, you know, as I was getting out, he was pointing it at [Rivers], so I just started shooting. You know, I heard him shoot, so I shot. . . . So [Rivers] fired and I was firing and he just . . . got up in the car and we left. . . . And on the news, I heard [Roberts] was dead. I turned myself in, man.

Windham stressed that he saw Roberts shooting in his direction, and he "just defended" himself.

Rivers told the police that after Roberts pulled a gun on him, he yelled for Windham, who came out of the truck firing. Rivers initially denied that he had a gun. Later, however, he admitted that he had pulled a 9-millimeter gun on Roberts, but denied firing it. Rivers also told the police that he and Windham had thrown Windham's gun into a trash dumpster. The police found a .380 pistol in the dumpster.

Dr. James Downs, a medical examiner, testified that he performed an autopsy on Roberts's body and found two gunshot wounds. One wound resulted from a bullet that entered Roberts's back and exited the front of his neck. Either wound could have caused his death. Downs testified that the wounds could have been made by either 9-millimeter or .380 ammunition.[2]

Detective Mark Galipeau testified that he recovered eight .380 caliber shell casings from the area around the shooting, including one

---

[2] There was evidence that 9-millimeter and .380 bullets are nearly identical in diameter.

in the alley where Roberts died. Firearms examiner Ronald VanFleet testified that the casing found in the alley had been fired from Windham's gun.

Windham was charged with murder and felony murder, but the jury found him guilty of the lesser included offense of voluntary manslaughter. The jury also found him guilty of possession of a firearm during the commission of a crime.

Under Georgia law, "a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony."[3] Whether the evidence shows that a person had a reasonable belief that he needed to use deadly force in defense of himself or another person is a question for the jury.[4] Although Rivers and Windham insisted that Roberts pulled a gun, no other witness saw Roberts with a gun, and no such gun was found at the scene. Moreover, there was evidence that Windham chased Roberts as he was running away and shot him from behind. Accordingly, the jury was entitled to reject Windham's claims of self-defense and defense of another, and the evidence was sufficient to support the verdict.[5]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED APRIL 6, 2006.

*Darden, Burns & Harris, Richard M. Darden*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.

---

[3] OCGA § 16-3-21 (a).

[4] *Giddens v. State*, 276 Ga. App. 353, 355 (1) (623 SE2d 204) (2005).

[5] See *Garner v. State*, 267 Ga. 884, 885 (1) (485 SE2d 729) (1997); *Joachim v. State*, 263 Ga. 816, 817 (1) (440 SE2d 15) (1994); *Linzy*, supra; *Brown v. State*, 226 Ga. App. 447, 447-448 (1) (486 SE2d 678) (1997); *Syms v. State*, 175 Ga. App. 179, 179-180 (1) (332 SE2d 689) (1985).