**FOURTH DIVISION
DOYLE, P. J.,
MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 7, 2014**

# In the Court of Appeals of Georgia

A13A2267. ROBINSON v. THE STATE.            DO-084 C

DOYLE, Presiding Judge.

Following a jury trial, Nekia Shorlet Robinson appeals from her conviction of aggravated assault[1] and possession of a firearm during the commission of a felony,[2] contending that (1) the evidence was insufficient to support the verdict, and (2) the trial court erred by finding that she knowingly, intelligently, and voluntarily waived her right to counsel in connection with a custodial interrogation. For the reasons that follow, we affirm.

---

[1] OCGA § 16-5-21 (a) (2).

[2] OCGA § 16-11-106 (b) (1).

Construed in favor of the verdict,[3] the evidence shows that Robinson was with a group of friends on the front porch of an apartment, playing a dice game with Armon Tucker. A dispute over a $5 bet arose between Robinson and Tucker, and they began arguing. The argument escalated, and they moved off the porch into the front yard, where Tucker said he did not want to "fight her because she was a girl[,] and he just wanted the money." Robinson replied, "you got to do what you got to do," while her hand was concealed in her pocket. Tucker then hit Robinson two or three times in the back of her head, and Robinson fired a .25 caliber pistol she had concealed in her pocket, hitting Tucker in the neck but not fatally.

Based on these events, Robinson was charged with aggravated assault and possession of a firearm during the commission of a felony. A jury found her guilty, and following the denial of her motion for new trial, Robinson filed this appeal.

1. Robinson contends that the evidence was insufficient to support the verdict because the State failed to disprove her justification defense beyond a reasonable doubt.[4] We disagree.

_____

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[4] See generally *Diaz v. State*, 270 Ga. 421, 421-422 (510 SE2d 529) (1999) ("When a defendant produces evidence that he was justified in using deadly force, the burden is on the State to disprove that affirmative defense of justification beyond a

2

When an appellate court reviews the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[5]

With respect to the justification defense

[u]nder Georgia law, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony. Whether the evidence shows that a person had a reasonable belief that deadly force was necessary in self-defense is a question for the jury. The jury's resolution of this question will not be reversed on appeal when the defendant's challenge

---

reasonable doubt.").

[5] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

3

merely points to conflicts in the evidence and questions witness credibility, matters which are to be determined exclusively by the jury.[6]

Here, there was evidence that Robinson invited Tucker to physically fight her after a verbal dispute arose over a $5 dice bet. Tucker was unarmed, and Robinson had concealed her firearm in her pocket. After two or three punches were thrown, Robinson shot Tucker in the neck. This Court has held that "[t]he evidence showing that the victim was unarmed at the time of the incident authorized the jury to conclude beyond a reasonable doubt that [the defendant] was not justified in using deadly force."[7] Under the facts of this case, we discern no error.[8]

2. Robinson also contends that the trial court erred by admitting her custodial interrogation because she did not knowingly and intelligently waive her right to counsel. We disagree.

In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the

---

[6] (Citations and punctuation omitted.) *Thomas v. State*, 296 Ga. App. 231, 232-233 (1) (674 SE2d 96) (2009). See also OCGA § 16-3-21 (a).

[7] *Thomas*, 296 Ga. App. at 233 (1).

[8] See id. See also *Hutto v. State*, 320 Ga. App. 235, 237 (1) (739 SE2d 722) (2013) (evidence that defendant invited unarmed victim to fight and then stabbed the victim authorized jury to reject justification defense).

circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno*[9] hearing will be upheld on appeal.[10]

The record shows that Robinson was 20 years old, and she appeared to be "in her right mind," "clear headed," and suffering no ill effects from the physical altercation. She was unconfined during the interview, which took place in an unlocked conference room at 8:30 p.m. She had completed the eleventh grade, but initially appeared to have trouble spelling her middle name. An officer then told her, "Nekia, prior to speaking with you, I have to read you something, ok? It's called a *Miranda*[11] warning." He then read her a *Miranda* warning card, concluding by telling her that "you can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand what I read you?" Robinson replied, "yes, sir." He then provided her with a written *Miranda* waiver form and

---

[9] 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[10] (Punctuation omitted.) *Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010).

[11] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

explained that it contained what he just read her. He then read a portion of it to her and allowed her to review it and initial each line. During her review of the waiver form, Robinson asked an officer, "What [does] this mean, like attorney, like a lady or something?" The officer re-read the form with her and explained that she had the right to speak to an attorney before making a statement or while making a statement, concluding by saying, "Do you understand that?" Robinson said, "It's saying . . . like, I could have someone in the room with us talking?" The officer nodded and replied, "If you want an attorney present, yes you can." Robinson appeared satisfied with that answer and resumed silently reading the waiver form. After she concluded reviewing each provision in the form, she signed the written waiver at the bottom. Based on these facts, Robinson argues that she was confused about the waiver process and her waiver was therefore not knowing and intelligent.

We discern no error. The video showed no evidence of coercion or enticement by the interviewing officer. Robinson's rights were explained to her orally and in a written form, which she reviewed, initialed, and signed. The officer answered her questions plainly and waited for her to review the form at her own speed. She gave no indication of further confusion or questions upon reading the form. Further, "[a] defendant must make a request for counsel sufficiently clearly that a reasonable

police officer in the circumstances would understand the statement to be a request for an attorney."[12] The trial court did not err by concluding that the question was not a request for counsel, rather for clarification, which the officer provided by explaining that Robinson could have an attorney present before or during questioning.[13] The "[t]estimony showed that at the time [of her interrogation, Robinson] knew where [s]he was and what [s]he was doing, that [s]he made appropriate responses to questions asked by the officers, and that [s]he did not appear to be under the influence of any intoxicant or drug."[14] Based on the record before us, we discern no clear error in the trial court's ruling.[15]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[12] (Punctuation omitted.) *Stacey v. State*, 292 Ga. 838, 844 (6) (741 SE2d 881) (2013).

[13] Our own review of the video confirms this. See *Clay v. State*, 290 Ga. 822, 825, n. 1 (725 SE2d 260) (2012) ("This Court owes no deference to a trial court's factual findings gleaned from a review of a videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence.")

[14] *Davis v. State*, 292 Ga. App. 782, 785 (2) (a) (666 SE2d 56) (2008).

[15] See *Simon v. State*, 269 Ga. 208, 210 (3) (497 SE2d 231) (1998); *Raulerson v. State*, 268 Ga. 623, 627 (2) (b) (491 SE2d 791) (1997) (below normal intelligence and poor reading skills do not, absent other factors, render confession inadmissible).