**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**February 27, 2015**

# In the Court of Appeals of Georgia

A14A2133.  HUGHLEY v. THE STATE.                              BO-079C

BOGGS, Judge.

Kleo Kelronte Hughley was convicted of voluntary manslaughter as a lesser included offense of malice murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a crime, and possession of a weapon during the commission of a crime.[1] Hughley's amended motion for new trial was denied, and he appeals. He contends the evidence was insufficient to disprove his defense of justification, that he was wrongly convicted for possession of a firearm during commission of the crime of voluntary manslaughter, that the trial court erred

---

[1]The jury found Hughley not guilty of felony murder and one count of aggravated assault with intent to murder. The trial court merged the two possession charges and merged the aggravated assault conviction into the voluntary manslaughter conviction.

in giving a jury instruction, and that he received ineffective assistance of counsel. Finding no error, we affirm.

Construed to support the jury's verdict, the evidence shows that Hughley and three companions were riding around in a car, smoking marijuana and in the case of one passenger "doing ecstacy." When Hughley, who was driving, stopped at a gas station to buy gas and cigarillos, the victim approached Hughley and asked for marijuana. When Hughley refused, believing that the victim was trying to rob him, the victim left and drove to a nearby apartment complex, where he told an acquaintance that he had had words at the gas station with someone who thought he was trying to rob him.

Some time later, Hughley and his companions entered the same apartment complex and parked. Hughley left the vehicle and returned; shortly afterwards, the victim approached the car, "smiling" and "looking like he wanted something." One of Hughley's companions testified that she did not believe the victim was trying to rob them, but that he appeared to be "on something, like he was too happy;" that is, under the influence of narcotics. The victim tried to open the passenger door but could not because it was missing its exterior handle. He then began knocking on the

window and exclaimed, "Let me holler at you. Come here." When everyone told him to "get away from the car" he walked towards the rear of the car.

Hughley then got out of the car and pointed a gun at the victim. The victim began to back away to the rear of the car, and Hughley "just shot him." Hughley returned to the car and exclaimed that it was an attempted robbery. Hughley testified at trial that the victim pulled a gun on him, and that he saw another individual with whom he had had a previous "altercation" nearby, pulling a bandana over his face. But this individual testified and said that he was some distance away speaking with a friend when he heard the gunshot. Two witnesses testified that they did not see a gun on the victim, the victim's girlfriend testified that he did not have a gun immediately before the incident, and the police found no firearm on or near the victim.

1. Hughley asserts that because the State failed to disprove his defense of justification or self-defense, the evidence was insufficient to support his conviction.

> When an appellate court reviews the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and

to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

With respect to the justification defense under Georgia law, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony. Whether the evidence shows that a person had a reasonable belief that deadly force was necessary in self-defense is a question for the jury. The jury's resolution of this question will not be reversed on appeal when the defendant's challenge merely points to conflicts in the evidence and questions witness credibility, matters which are to be determined exclusively by the jury.

(Citations, punctuation, and footnotes omitted.) *Robinson v. State*, 326 Ga. App. 59 (1) (755 SE2d 865) (2014). Here, the State presented evidence of an earlier, hostile encounter between Hughley and the victim, which "authorized the jury to conclude that [Hughley] shot the victim as a result of sudden passion or anger, rather than out of necessity to protect himself. [Cits.]" *Thomas v. State*, 296 Ga. App. 231, 234 (1) (674 SE2d 96) (2009). "The evidence showing that the victim was unarmed at the

4

time of the incident authorized the jury to conclude beyond a reasonable doubt that [Hughley] was not justified in using deadly force. [Cits.]" Id. at 233 (1); see also *Robinson*, supra, 326 Ga. App. at 61 (1). Additionally, the victim was apparently intoxicated, behaving in a way that one witness described as "too happy" and "smiling."[2] And evidence was presented that rather than simply driving away, Hughley got out of the driver's seat and confronted the victim, who then backed away to the rear of the car before Hughley shot him. This evidence authorized the jury to conclude that Hughley shot the victim as a result of sudden passion or anger rather than self-defense. See *Windham v. State*, 278 Ga. App. 663, 666 (629 SE2d 837) (2006) (conviction of voluntary manslaughter authorized on evidence that appellant pursued victim and that victim was unarmed, although appellant testified that victim "pulled a gun").

2. Hughley complains that the trial court erred in its charge on justification, because it failed to instruct the jury that the defense applied to all counts and not solely to the homicide charges. Because he made no objection at the time of the

---

[2]We have found it "doubtful" that the "confused babbling of a man obviously under the influence of intoxicants . . . would arouse the fears of a reasonable man," at least when communicated via tape recording. *McDonald v. State*, 182 Ga. App. 509, 511 (1) (356 SE2d 264) (1987)

charge, we review this enumeration of error under the "plain error" standard of review.[3] *Harris v. State*, 324 Ga. App. 411, 416 (5) (750 SE2d 721) (2013). Hughley has the heavy burden of demonstrating the following four elements:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, punctuation, and footnote omitted.) Id.

As the trial court observed, the instruction on justification "was not given in connection with any specific offense." The trial court explicitly and repeatedly instructed the jury that the defense of justification was applicable when a defendant "reasonably believes that such force is necessary to prevent death or great bodily

___

[3]Because Hughley's trial took place in 2011, we review for plain error under the old Evidence Code. See *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012).

injury to himself or a third person, or to prevent the commission of a forcible felony." The trial court instructed the jury that murder and aggravated assault are felonies, adding that a felony is "any crime against or involving the person of another." A reasonable juror would understand the general charge on justification as applying to all the offenses charged. See *Ross v. State*, 278 Ga. 429, 431 (3) (603 SE2d 268) (2004). Hughley has failed to show a "clear or obvious" error in the trial court's charge or that the charge affected the outcome of the proceedings. He therefore has failed to demonstrate plain error.

3. Hughley also contends that his conviction for possession of a firearm during the commission of a crime in Count V should be vacated, as the indictment references the crime of murder and he was convicted of the lesser offense of voluntary manslaughter. In *Prather v. State*, 259 Ga. App. 441, 442-443 (1) (576 SE2d 904) (2003), as here, the indictment charged the appellant with murder and with possession of a firearm during the commission of murder, but he was convicted of the lesser included offense of voluntary manslaughter. Id. at 442 (1). We observed that

> [t]he trial court charged the jury that the elements of possessing a firearm during the commission of a crime required proof of a felony, and then noted that murder is a crime defined as a felony. Voluntary manslaughter, although discussed earlier in the charge, was not

7

mentioned in the context of the possession charge and was never defined for the jury as a felony.

Id. at 443. Under these circumstances, we held that the jury was authorized to convict of possession of a firearm *only* during the commission of murder, and reversed the conviction on this count. Id.

But here, as the State points out, the trial court twice gave an additional instruction in connection with the two counts of possession of a firearm or weapon during the commission of a crime: "A person commits the offense of possession of a firearm during the commission of a crime when the person has on or within arm's reach of his person a firearm during the commission of or any attempt to commmit a felony, which is any crime against or involving the person of another." It then went on to state that murder and aggravated assault respectively were felonies "under the laws of this state" and "defined as previously stated." See Division 2, supra. While explicitly identifying every lesser included offense charged as an element of the possession charge might be the better practice, this instruction did *implicitly* identify voluntary manslaughter as both an offense against the person and a felony, and instructed the jury that possession could be based upon "*any* attempt to commit a felony, which is *any* crime against or involving the person of another." (Emphasis

8

supplied.) The jury therefore was informed that the possession charge here, unlike that in *Prather*, could be based upon "any crime against or involving the person of another" or "any attempt to commit a felony," thus including voluntary manslaughter. Considering the charge as a whole, we cannot conclude that the omission of an explicit reference to voluntary manslaughter in the charge on possession was error.

In *Prather*, we expressly did not consider "whether a defendant charged with possession of a firearm during the commission of a specific felony could be found guilty of possession of a firearm when he was convicted of a lesser included felony." Id. at 443 (1); see also *Crowder v. State*, 241 Ga. App. 818, 820-821 (3) (b) (527 SE2d 901) (2000). But Hughley does not argue this point in his brief on appeal, relying instead upon the alleged inadequacy of the jury charge, and we therefore do not address it. Court of Appeals Rule 25 (c) (2).[4]

4. Hughley complains of ineffective assistance of counsel in three respects. In ruling on a claim of ineffective assistance,

---

[4]In *Prather*, we noted the Supreme Court's holding "[i]n the analogous situation of a felony murder" that "a felony which is an included offense of another felony which is charged in an indictment may constitute the underlying felony upon which conviction of felony murder may be grounded, given adequate proof and correct jury instructions." (Citation, punctuation, and emphasis omitted.) 259 Ga. App. at 443 (1).

[u]nder the two-part test established in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), [Hughley] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Harrison v. State*, 313 Ga. App. 861, 865 (3) (722 SE2d 774) (2012).

As a general rule, reasonable trial tactics and strategies do not amount to ineffective assistance of counsel. The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his or her client. Whether an attorney's trial tactics were reasonable is a question of law, not fact. When assessing the reasonableness of counsel's actions, a court must evaluate counsel's performance from his or her perspective at the time of trial. This Court reviews a trial court's ruling on an ineffective assistance claim on appeal by accepting the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *McNair v. State*, ___ Ga. App. ___ (3) (2014 Ga. App. LEXIS 845). Moreover, as our Supreme Court has observed,

10

we are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did – whether for the same reasons given by the actual lawyer or different reasons entirely – the actual lawyer cannot be said to have performed in an objectively unreasonable way. [Cit.]

*Shaw v. State*, 292 Ga 871, 875 n.7 (3) (a) (742 SE2d 707) (2013).

(a) Hughley first asserts that his counsel was ineffective in failing to object to what amounted to testimony of the victim's good character from his girlfriend, that he was "laid back," "stayed to himself" and was "lovable" and "goofy" and that he "don't play with nothing like that."[5] But at the hearing on Hughley's motion for new trial, his trial counsel explained that he based his argument that the victim was armed upon the girlfriend's testimony that she saw a black male "messing with [the victim's] body" before he got into Hughley's car and they "took off," and that when she approached the victim she saw "his pants pockets inside out." Trial counsel testified that he had "other information" that this individual had taken a firearm off the victim's body. This testimony was the basis of his argument to the jury that a witness

---

[5]Trial counsel testified at the hearing on the motion for new trial that he interpreted the "don't play" remark not to mean that the victim "didn't play with guns" but that "he would have been the first one in the house" if he heard gunshots.

11

lied at trial about never leaving Hughley's vehicle because he took the victim's firearm before anyone else came on the scene.

Trial counsel further testified that, because he relied heavily upon this witness' credibility to support his theory of the case, he argued to the jury that she was a credible witness, speaking from emotion, who had no reason to lie. Additionally, he "gave her a lot of leeway in the things that she testified to" because she was "crying, was very distraught and upset." He believed on balance, considering the way that the testimony was delivered and the jury's acquittal of Hughley on the murder charge, that this witness' statements did not hurt his case. Given trial counsel's stated reasons for not attacking this witness – that he did not want to attack her credibility because he needed the jury to believe her testimony to bolster his theory that the victim was armed, and because he did not wish to attack the witness while she was upset – the trial court was authorized to find that counsel applied a valid trial strategy and was not ineffective in his tactical decision not to object. See *Kilpatrick v. State*, 276 Ga. 151, 152-153 (2) (575 SE2d 478) (2003) (trial counsel not ineffective in choosing not

to object to testimony from victim's mother to avoid appearing insensitive before jury).[6]

(b) (i) Next, Hughley contends that his counsel was ineffective in failing to impeach two of the State's witnesses – the two female occupants of Hughley's vehicle – with a prior inconsistent statement conflicting with their trial testimony that they did not see the victim with a firearm. The two witnesses were videotaped while they were alone together in a police interview room. Hughley asserts that the witnesses "agreed that [the victim] had a gun, and concluded that it must have been removed from his body before the police arrived," and that trial counsel should have cross-examined these witnesses on this statement. But this is by no means as clear as Hughley contends.

The audio of the recording is noisy and only intermittently audible. There is no discernible context, other than that the witnesses, unaware that they are being recorded, are discussing in hushed voices "get[ting] your s--t straight" and "mak[ing] it beneficial to him," presumably Hughley. Shortly before the exchange pointed out

---

[6]Hughley failed to question trial counsel regarding his contention that counsel was ineffective in not asking for a continuing objection to the testimony. "Absent testimony to the contrary, counsel's actions are presumed strategic. [Cit.]" *Hendrix v. State*, 328 Ga. App. 819, 821-822 (2) (b) (762 SE2d 820) (2014); see also *Shaw*, supra, 292 Ga. at 876 (3) (b).

13

by Hughley, there are audible remarks referring to what an unnamed individual "did - and I did too - even though we were both unarmed - I didn't see him," and a reference to someone being "beat up" and "somebody did it after we broke." Both witnesses then exclaim, "I don't know" and throw their hands out in a gesture of uncertainty or confusion. Immediately afterwards, talking over each other, they say, "They took it – they took it from him."

Even assuming that this cryptic reference to "they", "it", and "him" refers to persons unknown taking a firearm from the victim, it appears to be nothing more than speculation in the midst of the witnesses' attempt "to get [their stories] straight" for the police, particularly in light of the other statements made at the time. Moreover, as counsel pointed out at the hearing, Hughley's contention that his own testimony was the only evidence the victim had a gun was incorrect. Trial counsel already had adduced testimony from the victim's girlfriend that she saw an individual leaning over the victim and "messing with him," and that she found his pockets turned out. Finally, trial counsel testified at the hearing on the motion for new trial that he believed "that we were able to tie all of the issues up together" and that "the jury did

believe our theory of the case in general."[7] He could not remember specific quotes or how he used them, but he testified that he argued from the police videotapes during closing, which was not recorded except for counsels' objections.

"An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of competent performance. Therefore, where the record is incomplete or unclear about counsel's actions, we will presume that he did what he should have done." (Citations and punctuation omitted.) *Shaw*, supra, 292 Ga. at 874 n.5 (3) (a). Under these circumstances, Hughley cannot demonstrate either that counsel's performance was deficient in this regard or that, if so, it affected the outcome of the trial.

(ii) Hughley also contends in this enumeration of error that trial counsel was ineffective in failing to request a charge on prior inconsistent statements, but the jury was charged on prior inconsistent statements. This contention is therefore without merit. *Jarrett v. State*, 299 Ga. App. 525, 531 (7) (a) (683 SE2d 116) (2009).

---

[7]Hughley's conviction on a lesser included offense on the count of malice murder and acquittal on counts of felony murder and aggravated assault with intent to murder "strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Citations omitted.) *Green v. State*, 218 Ga. App. 648, 651 (3) (a) (463 SE2d 133) (1995).

(c) Finally, Hughley contends that his counsel was ineffective in presenting a defense of voluntary manslaughter and then failing to seek an appropriate charge on justification as to the lesser included offense. Hughley having failed to show plain error in the charge on justification, see Division 2, supra, he cannot show prejudice sufficient to satisfy the second prong of the *Strickland* standard in the circumstances of this case. *Shaw v. State*, supra, 292 Ga. at 877 (3) (c) n.11.

Reviewing the record as a whole in light of the applicable standard, the evidence is sufficient to support the trial court's determination that Hughley's trial counsel did not provide ineffective assistance.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur*.