S07A1755. PEREZ v. THE STATE.
(657 SE2d 846)

CARLEY, Justice.

In December of 2005, Orlando Perez was arrested for a murder committed in 1996. Because he expressed a limited understanding of English, his interview was conducted by an officer who was fluent in Spanish. After reading Perez his rights and establishing that he understood them, the officer obtained his signature on a written waiver form. During the course of the interview, Perez was shown a photograph of the victim, and the following occurred:

> Officer: And this was one of your friends. Remember you have a son. Would you like your son to see you like this?
> Perez: Mm, no, how, the other thing, in any moment the paper says I can stop the interrogatory. Right? Or no?
> Officer: But you understand? What I, you have to first hear what I am explaining to you. Okay? This is what is going to help. So you need to be intelligent.
> Perez: Uh hum.
> Officer: First, you should know what we are saying, for you to know, much later, when you talk to your lawyer, what can occur. Okay?

Perez: Uh hum. (nods head yes)

The questioning continued, and Perez made an inculpatory admission.

Perez filed a pre-trial motion to suppress his statement, contending that it was inadmissible because he had asserted the right to remain silent, which was not honored by the officer. After conducting a hearing, the trial court denied the motion, finding, in relevant part, that

[t]here was no unequivocal request for counsel or invocation of defendant's right to remain silent during police questioning. . . . Defendant's statement: "I can stop the interrogatory. Right? Or no?" is clearly not an unequivocal request and is not an invocation of any Constitutional right.

The trial court certified its order for immediate review, and Perez applied for an interlocutory appeal. We granted the application, in order to determine whether, considering the officer's lack of response to Perez's reference to the constitutional right to remain silent, his statement is admissible.

"A person being subjected to custodial interrogation may at any time express his or her desire to remain silent and, thereby, end the interrogation. Any exercise of this right to silence must be 'scrupulously honored.' [Cit.]" *Green v. State*, 275 Ga. 569, 571-572 (2) (570 SE2d 207) (2002). The question of what qualifies as "any exercise" of the Fifth Amendment right to remain silent was addressed in *Hatcher v. State*, 259 Ga. 274 (379 SE2d 775) (1989). There, citing *Christopher v. Florida*, 824 F2d 836, 842 (11th Cir. 1987) with approval, this Court held that if the suspect makes only an ambiguous or equivocal request to end the questioning, "the police 'may ask questions designed to clarify whether the suspect intended to invoke his right to remain silent,' but they may not simply continue the interrogation. [Cit.]" *Hatcher v. State*, supra at 277 (2), fn. 2.

Subsequently, however, the Supreme Court of the United States decided *Davis v. United States*, 512 U. S. 452, 461-462 (II) (114 SC 2350, 129 LE2d 362) (1994), holding that, with regard to the Sixth Amendment right to counsel,

when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. . . . Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being

suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.

Some "federal courts have extended that [*Davis*] rationale to cases where persons have made assertions of the right to *silence*. [Cits.]" (Emphasis in original.) *Green v. State*, supra at 572 (2). Thus, the Eleventh Circuit no longer follows the "clarification only" rule of *Christopher*, so that now

> [a] suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect's intent, and they may proceed with the interrogation.

*Coleman v. Singletary*, 30 F3d 1420, 1424 (II) (A) (11th Cir. 1994). Although the Eleventh Circuit has abandoned the "clarification only" rule, "this Court has not yet addressed whether such clarification is a *requirement* in Georgia or is simply the better practice. [Cits.]" (Emphasis in original.) *Green v. State*, supra. This case presents us with that opportunity.

The decisions of the Eleventh Circuit are not binding on this Court, but they are persuasive authority. *McKeen v. FDIC*, 274 Ga. 46, 48, fn. 1 (549 SE2d 104) (2001). In *Coleman*, the Eleventh Circuit held that the rationale of *Davis* should apply equally to instances wherein the suspect makes only an equivocal reference to the right to remain silent, because there is no basis for distinguishing between the Fifth and Sixth Amendment rights which *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) was intended to safeguard.

> [T]he same rule should apply to a suspect's ambiguous or equivocal references to the right to cut off questioning as to the right to counsel. [Cit.] The Supreme Court's concern in *Davis* was to craft "a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information." [Cit.] The Court rejected a rule requiring that police cease

questioning a suspect after an ambiguous or equivocal invocation of his *Miranda* rights out of a fear that the "clarity and ease of application" of the bright line rule "would be lost." [Cit.] Because this concern applies with equal force to the invocation of the right to remain silent, and because . . . the same rule should apply in both contexts, we hold that the *Davis* rule applies to invocations of the right to remain silent.

*Coleman v. Singletary*, supra. The Eleventh Circuit is not alone in reaching the conclusion that the "bright line" rationale of *Davis* also applies to instances of ambiguous reference to the right to remain silent. "[E]very circuit that has addressed the issue squarely has concluded that *Davis* applies to both components of *Miranda*: the right to counsel and the right to remain silent. [Cits.]" *Bui v. DiPaolo*, 170 F3d 232, 239 (III) (1st Cir. 1999).

Based on this persuasive federal authority, "[w]e see no reason to apply a different rule to equivocal invocations of the right to cut off questioning." *Martin v. Wainwright*, 770 F2d 918, 924 (II) (A) (11th Cir. 1985), modified on other grounds, 781 F2d 185 (11th Cir. 1986). If there is no basis for drawing a legal distinction between the right to remain silent and the right to counsel, it follows that a "clarification only" rule for Fifth Amendment purposes

> "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity," [cit.] because it would needlessly prevent the police from questioning a suspect . . . even if the suspect did not wish to [remain silent].

*Davis v. United States*, supra at 460 (II). While clarification of an ambiguous reference to the constitutional right to remain silent may constitute good police practice, if the "clarification only" rule was a legal requirement, then

> [p]olice officers would be forced to make difficult judgment calls about whether the suspect in fact wants [to end the interrogation] even though he has not said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests [that they cease to do so].

*Davis v. United States*, supra at 461 (II). See also *Jordan v. State*, 267 Ga. 442, 444 (1) (480 SE2d 18) (1997) (adopting *Davis* reasoning and holding that, after an initial waiver of his *Miranda* rights, a suspect must thereafter signify his intent to invoke the Sixth Amendment by making an unambiguous request for counsel). Accordingly, *Hatcher v. State*, supra, is hereby overruled insofar as it adopted the "clarification only" rule which was subsequently rejected by *Davis*.

The remaining issue for decision is whether Perez's statement to the officer was an unequivocal invocation of his Fifth Amendment right to remain silent, such that the interrogation should have ceased. Resolution of that question depends on whether he articulated a

> "desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." . . . [W]hatever the proper definition of a "reasonable police officer" might be, that phrase must contemplate interrogators who are not actively seeking to interrupt and/or ignore the suspect's assertion of rights.

*Green v. State*, supra at 573 (2), fn. 10. The officer who questioned Perez testified at the suppression hearing that, rather than construing Perez's comment as an assertion of the right to remain silent, she considered it as simply a rhetorical statement which actually confirmed his understanding of the Fifth Amendment right about which he had already been advised and which he had previously waived. In relevant part, her testimony was as follows:

> I — the way that our discussion was going, I didn't take it as he wanted to stop the interrogat[ion]. He just made a statement, ["]I guess I can stop the interrogat[ion."] I told him, well, you need to listen to everything that I'm telling you, and then he went, ["]uh-huh["]. . . . He made a statement. He wasn't asking me a question, and he said ["]right or no,["] speaking Spanish. . . .

Perez did not testify and contradict the officer by asserting that he intended to remain silent, the right to which he had only just waived after having been apprised of its availability to him. His comment to the officer was at least as ambiguous, if not more so, than the suspect's statement in *Coleman v. Singletary*, supra at 1423, which was: " 'I don't know [if I want a public defender]. But if he said to stop [the interrogation] I don't want to do what he said not to do.' " If Perez had truly intended to withdraw his waiver and invoke his

right to remain silent, he would not have acquiesced in responding to the officer's further questioning. The right to remain silent must be scrupulously honored if, after previously acknowledging awareness of the availability of that right and waiving it, the suspect changes his mind and unambiguously asserts it. However,

> [b]ecause [Perez's] statement was equivocal, his subsequent statements were admissible. It does not matter whether the [officer] dropped all questions about the crime until [Perez] clarified his intent, because in the wake of the Supreme Court's decision in *Davis*, there is no duty to clarify a suspect's intent after such a statement. The obligation to cease questioning a suspect arises only when the suspect unambiguously invokes the right to remain silent. That did not occur here.

*Coleman v. Singletary*, supra at 1426 (II) (A). Therefore, the trial court did not err in denying the motion to suppress Perez's statement. *Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 25, 2008.

*Jack J. Menendez*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Brett E. Pinion, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.