S10A0323. BARNES v. THE STATE.
(696 SE2d 629)

THOMPSON, Justice.

Defendant Joshua Barnes was convicted of malice murder and other crimes in connection with the shooting deaths of Timothy Henley and Natalie Nichols.[1] He appeals, asserting, inter alia, the

---

[1] The crimes occurred on December 2, 2007. Defendant was indicted on February 22, 2008, and charged with two counts of malice murder, two counts of felony murder, two counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, armed robbery, conspiracy to violate the Georgia Controlled Substances Act, selling marijuana, and possession of a firearm by a convicted felon. The sale of marijuana count was nolle prossed. Trial commenced on February 9, 2009 and ended on February 12, 2009. The jury found defendant not guilty of armed robbery, but guilty of the remaining charges. The trial court sentenced defendant to two consecutive life terms for the malice murder charges, a thirty-year consecutive term for the conspiracy charge, and three consecutive five-year terms for the firearms charges. The remaining counts were merged and vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Defendant's timely filed motion for new trial, as amended, was denied on October 7, 2009. Defendant filed a notice of appeal on October 16, 2009. The appeal was docketed for the January term in this Court and submitted for decision on the briefs.

trial court erred in admitting statements he made to police. Finding no error, we affirm.

1. The victims traveled from Tennessee to Georgia to buy drugs. Henley met with defendant, a known drug dealer, on the night of December 1, 2007, at the home of defendant and his girlfriend. Henley wanted defendant to sell him some "powder"; Henley tried to sell defendant a pistol, but defendant was not interested in buying it. Henley then made a call from his cell phone asking someone to wire him some money. Henley left, telling defendant he was going to get the money. Later that evening, Henley and Nichols received a money transfer in the amount of $780 at a Western Union office. Phone records show numerous calls between Henley and defendant at that time.

In the early morning hours of December 2, Henley and Nichols were found in their car. They were slumped over in the front seats, both having been shot in the back of the head. Henley was shot once; Nichols was shot twice. Around the same time, defendant returned home and his girlfriend, who had gone to sleep earlier, awoke. Defendant's girlfriend noticed that defendant's hand was scraped; he told her that he had been in a fight, that Henley tried to rob him and that "he had to go ahead and do it." She went with defendant to a Wal-Mart to purchase bandages and peroxide to treat his hand. When she asked defendant about Henley again, he told her he had "taken care of" him.

Three bullets were recovered from the bodies of the victims. They were fired from the same pistol and matched 23 live rounds of ammunition which were found in a box in defendant's house.[2] In a statement to police, defendant admitted that he had been in the back seat of the victims' car and that he sold them crack cocaine and marijuana.

The evidence was sufficient to enable any rational trier of fact to find defendant guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Contrary to defendant's contention, the absence of forensic evidence placing defendant in the victims' car at the time of the murders does not disprove his guilt.

2. Defendant asserts the trial court erred in admitting statements he made to police because he was given only a "cursory" reading of the *Miranda* warnings and was interrogated without first being given an opportunity to reflect upon, and invoke, his rights. This assertion is incorrect. When a defendant is read and understands his *Miranda* rights, he must invoke them clearly and unam-

---

[2] The bullets matched with regard to manufacturer, caliber, weight and design.

biguously. A defendant does not invoke his *Miranda* rights by remaining silent. *Berghuis v. Thompkins*, ___ U. S. ___ (130 SC 2250, 176 LE2d 1098) (2010).

After the interrogating agent read defendant his *Miranda* rights, defendant signed the *Miranda* waiver form, and thereby waived his rights clearly and voluntarily.[3] The agent then asked defendant if he understood he was not being promised anything or being forced to speak with the authorities; defendant replied that he understood. It was only then that the agent began interrogating defendant and that defendant began to answer the agent's questions.

Of course, an accused may end a custodial interrogation at any time by invoking his constitutional right to remain silent. To do so, a defendant must unambiguously and unequivocally express his desire to invoke that right. And any invocation of the right must be "scrupulously honored." *Green v. State*, 275 Ga. 569, 571-572 (570 SE2d 207) (2002). However, defendant's statement, "if you're not going to talk real talk, then we shouldn't talk" was not an unequivocal and unambiguous invocation of his right to remain silent. On the contrary, it was conditional and ambiguous, and lacked sufficient clarity to lead a reasonable police officer to understand that defendant was exercising his right to remain silent. *Perez v. State*, 283 Ga. 196, 199-200 (657 SE2d 846) (2008).

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression if they guess wrong. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights might add marginally to *Miranda*'s goal of dispelling the compulsion inherent in custodial interrogation. But as *Miranda* holds, full comprehension of the rights to remain

---

[3] Defendant was informed of his right to remain silent, that anything he said could be used against him, that he had a right to counsel and one would be appointed to represent him if he could not afford one, and that he could decide at any time to assert his rights.

silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process.

(Citations and punctuation omitted.) *Berghuis v. Thompkins*, supra. It follows that defendant's statement that he should not talk in the absence of "real talk" was insufficient to trigger the interrogating agent's duty to cease questioning.[4]

3. Because defendant was charged with conspiracy to violate the Georgia Controlled Substances Act, the trial court allowed as similar transaction evidence proof that defendant previously pled guilty to felony possession of cocaine and misdemeanor possession of marijuana. The trial court did not abuse its discretion in allowing this evidence. See generally *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). It was offered for a proper purpose — to show defendant's bent of mind, course of conduct, or intent with regard to the drug charge — as possession of drugs is a prerequisite to the sale of drugs. Thus, the similar transaction evidence was relevant to show that defendant was someone who possessed drugs, and that is why the victims chose to meet with him. Inasmuch as defendant pled guilty to the prior drug charges, it was clear that defendant was the perpetrator of the similar acts. And he admitted being with the victims and selling them drugs. Thus, identity was not an issue. Finally, there was sufficient similarity between the similar transactions and the charged offense to show that the similar acts were logically relevant to a material issue at trial. *Garrett v. State*, 253 Ga. App. 779, 781 (3) (560 SE2d 338) (2002) (prior conviction for possession of amphetamine admissible to show motive, intent, or bent of mind in prosecution for trafficking in amphetamine). In this regard it is worth noting that when similar transaction evidence is used to show bent of mind, course of conduct, motive or intent, "a lesser degree of similarity is required than when such evidence is introduced to prove identity."[5] *Smith v. State*, 273 Ga. 356, 357 (541 SE2d 362) (2001).

4. The trial court did not err in denying defendant's request to bifurcate the proceedings simply because he was charged with possession of a firearm by a convicted felon and his prior felony conviction for possession of cocaine was admitted in evidence. The prior felony cocaine possession conviction was independently admissible as a similar transaction. See Division 3, supra. Thus, the prior

---

[4] Defendant continued answering questions after making the ambiguous statement. He ultimately expressed an unequivocal desire to remain silent, and the agent terminated the interview at that time.

[5] For this reason, *Faison v. State*, 199 Ga. App. 447 (405 SE2d 277) (1991), in which defendant raised a mistaken identity defense to a charge of selling cocaine, is inapplicable.

felony conviction was legally material to the other charges in this case and bifurcation was unnecessary. See *Cordy v. State*, 257 Ga. App. 726, 727 (572 SE2d 73) (2002). Further, the trial judge instructed the jury on the proper use and purpose of the prior conviction evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Anthony S. Carter*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, David E. Boyle, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.