# WHOLE COURT

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** http://www.gaappeals.us/rules

**June 30, 2017**

# In the Court of Appeals of Georgia

A15A0092. THE STATE v. ANDRADE.

ANDREWS, Judge.

Following a hearing, the trial court granted, in part, Aram Andrade's motion to suppress statements he made to a police officer. The State appeals, and we reverse.

"When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). An appellate court must (1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court. Id. However, an appellate court "may also consider facts that 'definitively can be ascertained exclusively by reference to evidence that is

uncontradicted and presents no questions of credibility,' such as facts indisputably discernible from a videotape." *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015); *see also Hughes*, 296 Ga. at 746 (1) n.5 (noting that "to the extent that material facts could be discerned by appellate court from video recording, no deference to findings of trial court was required"). And we review de novo the trial court's application of law to the undisputed facts. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

So viewed, the record shows that on October 11, 2012, 17-year-old Andrade agreed to speak to an officer from the City of Pearson Police Department, and he accompanied the officer to the local sheriff's office. Beginning that night and continuing into the early morning hours of October 12, Andrade gave an initial interview, which was recorded. At the beginning of the initial interview, the officer told Andrade that he was not under arrest, not required to answer any questions, and free to leave at any time. Andrade agreed to speak with the officer.

After the initial interview concluded, the officer learned of evidence that had been discovered during a consent search of Andrade's house and sought to interview Andrade again. The second interview was also recorded, although the recording is of poor quality. At the beginning of his second interview, Andrade was advised of his

2

*Miranda* rights, both orally and in writing, and signed a waiver of those rights, including his right to remain silent. Immediately thereafter, the officer asked Andrade whether he wanted to make a statement. Andrade's response is unintelligible on the recording, and the officer, who evidently could not understand the response, stated, "I'm sorry?" Andrade looked down, shook his head slightly, and mumbled something that could have been "no," but also could have been, "I don't know." At that point, the officer stated: "Alright. We - we need to talk about this, alright? I - I've got some things I - I've got some questions I need to ask you. Are you - are you going to talk to me?" Andrade replied, "yeah," and proceeded to speak with the officer. The interview continued, and Andrade made incriminating statements.

Andrade was subsequently indicted for three counts of rape (OCGA § 16-6-1 (a)) and one count of first-degree burglary (OCGA § 16-7-1 (b)). He filed a motion to suppress the statements he made during both interviews. Following a hearing, the trial court denied his motion to suppress as to the initial interview, but granted

Andrade's motion to suppress the second interview. The State appeals,[1] contending that the trial court erred in finding that Andrade invoked his right to remain silent.

Undoubtedly, "an accused may end a custodial interrogation at any time by invoking his constitutional right to remain silent." *Barnes v. State*, 287 Ga. 423, 425 (2) (696 SE2d 629) (2010). To do so, however, the defendant "must unambiguously and unequivocally express his desire to invoke that right." Id. As explained by our Supreme Court:

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression if they guess wrong. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights might add marginally to

---

[1] This Court initially dismissed the State's appeal as untimely under OCGA § 5-7-1 (a) (5). On review, the Supreme Court of Georgia reversed, holding that the appeal was timely filed under OCGA § 5-7-1 (a) (4), and remanded the case to this Court to consider the merits. *State v. Andrade*, 298 Ga. 464 (782 SE2d 665) (2016).

> *Miranda*'s goal of dispelling the compulsion inherent in custodial interrogation. But as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process.

Id. at 425-426.

The trial court suppressed Andrade's incriminating statements after finding that Andrade "indicat[ed] on the video that he did not wish to speak with" the officer. According to the trial court, the officer "stated to [Andrade] in negative question form, words to the effect of - you don't want to talk?," to which Andrade "appeared to respond with voice and head gestures in the negative." The video recording, however, belies these findings, which are thus clearly erroneous. The officer did not say anything resembling, "you don't want to talk?" Instead, he affirmatively asked Andrade whether he would give a statement, and Andrade offered unintelligible responses, until, on further clarification, he explicitly stated that he would speak with the officer.

The officer testified at the suppression hearing that Andrade never invoked his right to remain silent or indicated that he did not wish to talk with police. And Andrade admitted at the hearing that he agreed to speak with the officer. Although he vaguely asserted that at *some* point during his two interviews, he told the officer

5

that he "wasn't going to tell him, talk to him," he offered no testimony establishing when he made this statement, the circumstances surrounding it, or whether it constituted an unambiguous invocation of his right to remain silent.

Simply put, the record reveals nothing that would "lead a reasonable police officer to understand that [Andrade] was exercising his right to remain silent." *Barnes*, 287 Ga. at 425. Neither the video nor Andrade's testimony shows that he unambiguously and unequivocally invoked the right before making his incriminating statements. Instead, he signed a waiver of rights and, when asked whether he would make a statement, gave several unintelligible responses before stating, "yeah." Thus, Andrade did not unambiguously and unequivocally invoke his right to remain silent. See id. at 426 ("defendant's statement that he should not talk in the absence of 'real talk' was insufficient to trigger the interrogating agent's duty to cease questioning"); *Perez v. State*, 283 Ga. 196, 200-201 (657 SE2d 846) (2008) ("If Perez had truly intended to withdraw his waiver and invoke his right to remain silent, he would not have acquiesced in responding to the officer's further questioning."). But see *State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005) (trial court properly found that defendant invoked his right to remain silent where defendant "shook his head in the

negative when asked if he wanted to talk about the victim's death and the questioning agent took [defendant's] response to be a refusal to talk about the incident").

Because there is no evidence that Andrade unambiguously and unequivocally invoked his right to remain silent, the trial court erred in suppressing his statements to police.

*Judgment reversed. Barnes, P. J., Ellington, P. J., Dillard, P. J., McFadden, P. J., Ray, Branch, and McMillian, JJ., concur. Miller, P. J., dissents.*

A15A0092. THE STATE v. ANDRADE.

MILLER, Presiding Judge, dissenting.

This case presents to us with an ambiguous video of Andrade's interrogation and, thus, this Court is bound to defer to the trial court's factual determinations if there is any evidence to support them. The question before us is not whether Andrade unequivocally invoked his right to silence, but is instead whether the trial court could have found that he had. In reversing the trial court, the majority opinion misapplies our deferential standard of review and exceeds its authority by usurping the role of the fact-finder. I therefore respectfully dissent.

We are "a court of review" and lack jurisdiction to decide disputed issues of fact. Likewise, we cannot draw a different inference

from the evidence or make a credibility determination contrary to the one made by the trial court. This is true even if we would have made a different conclusion had the members of this Court been the trial judge.

(Footnotes omitted.) *State v. Ellison*, 271 Ga. App. 898, 902 (3) (c) (611 SE2d 129) (2005); see also Ga. Const. of 1983, Art. VI, Sec. V, Par. III. Thus, "[u]nless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement . . . will be upheld on appeal." (Citation and punctuation omitted.) *Butler v. State*, 292 Ga. 400, 403 (2) (738 SE2d 74) (2013).

While the majority highlights the need for an "unambiguous" invocation of one's right to remain silent, that is not question before us. Faced with an ambiguous record, this Court "*cannot* second-guess the trial court" but rather must "draw all reasonably permissible inferences from the evidence to support the trial court's ruling."[1] See *Ellison*, supra, 271 Ga. App. at 902-903 (5) (emphasis supplied); see also *State v. Mohammed*, 304 Ga. App. 230, 231-232 (695 SE2d 721) (2010) (where a video recording is consistent with more than one factual finding, this Court defers

---

[1] The two decisions primarily relied on by the majority add little to the analysis here, as neither case involved the deference this Court must give to the trial court's factual findings on a motion to suppress. See *Barnes v. State*, 287 Ga. 423, 425 (2) (696 SE2d 629) (2010); *Perez v. State*, 283 Ga. 196, 200-201 (657 SE2d 846) (2008).

2

to the trial court's interpretation of the recording). By basing its ruling on its disagreement with the trial court about the content of the video, the majority fails to follow precedent and oversteps its role by replacing the trial court as fact-finder.

As conceded by the majority, the poor quality of the audiovisual recording in this case leaves us with an ambiguous record to review.[2] Andrade's muted responses to the officer's questions admittedly are difficult to understand in the recording. Although the trial court could have reached a different conclusion about the content of the video, it did not do so, and our review of its interpretation of the video is limited. Nevertheless, the majority essentially makes its own de novo factual finding that "Andrade did not unambiguously and unequivocally invoke his right to remain silent." Supra, at 6.

That is not the proper role of this Court. This Court rather is tasked with answering a narrow question: viewing the totality of the circumstances in the light most favorable to the challenged ruling, was there *any evidence* to support the trial court's finding? See *State v. Colvard*, 296 Ga. 381, 382 (1) (768 SE2d 473) (2015); *Butler*, supra, 292 Ga. at 403 (2).

---

[2] Notwithstanding the majority's passing suggestion to the contrary, the critical facts in this case are not "indisputably discernible" from the audiovisual recording. See supra, at 2.

With the proper inquiry identified, the case is simple and the answer is clear: there is some evidence to support the trial court's finding. Notably, both Andrade and the officer testified during the suppression hearing, and the trial court was able to assess their credibility in reaching its factual findings. See *Butler*, supra, 292 Ga. at 403 (2). As an appellate court, we do not have the benefit of seeing and hearing these witnesses and, thus, we are bound to accept the trial court's credibility findings. See id.

Although my esteemed colleagues are no doubt aware of the different roles of the trial and appellate courts, they have conflated those roles in this case. Instead of deferring to the trial court's factual findings on an ambiguous record, they have impermissibly substituted their own interpretation of the video for that of the trial court. Giving proper deference to the trial court, I would affirm the judgment.

4