Andrews, Judge.
Following a hearing, the trial court granted, in part, Aram Andrade’s motion to suppress statements he made to a police officer. The State appeals, and we reverse.
“When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts.” Hughes v. State, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). An appellate court must (1) accept a trial court’s findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court. Id. However, an appellate court *229 “may also consider facts that ‘definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility,’ such as facts indisputably discernible from a videotape.” State v. Allen, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015); see also Hughes, 296 Ga. at 746 (1) n. 5 (noting that “to the extent that material facts could be discerned by appellate court from video recording, no deference to findings of trial court was required”). And we review de novo the trial court’s application of law to the undisputed facts. Vansant v. State, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
So viewed, the record shows that on October 11,2012,17-year-old Andrade agreed to speak to an officer from the City of Pearson Police Department, and he accompanied the officer to the local sheriff’s office. Beginning that night and continuing into the early morning hours of October 12, Andrade gave an initial interview, which was recorded. At the beginning of the initial interview, the officer told Andrade that he was not under arrest, not required to answer any questions, and free to leave at any time. Andrade agreed to speak with the officer.
After the initial interview concluded, the officer learned of evidence that had been discovered during a consent search of Andrade’s house and sought to interview Andrade again. The second interview was also recorded, although the recording is of poor quality. At the beginning of his second interview, Andrade was advised of his Miranda rights, both orally and in writing, and signed a waiver of those rights, including his right to remain silent. Immediately thereafter, the officer asked Andrade whether he wanted to make a statement. Andrade’s response is unintelligible on the recording, and the officer, who evidently could not understand the response, stated, “I’m sorry?” Andrade looked down, shook his head slightly, and mumbled something that could have been “no,” but also could have been, “I don’t know.” At that point, the officer stated: “Alright. We — we need to talk about this, alright? I — I’ve got some things I — I’ve got some questions I need to ask you. Are you — are you going to talk to me?” Andrade replied, “yeah,” and proceeded to speak with the officer. The interview continued, and Andrade made incriminating statements.
Andrade was subsequently indicted for three counts of rape (OCGA § 16-6-1 (a)) and one count of first-degree burglary (OCGA § 16-7-1 (b)). He filed a motion to suppress the statements he made during both interviews. Following a hearing, the trial court denied his motion to suppress as to the initial interview but granted Andrade’s *230 motion to suppress the second interview. The State appeals,[1] contending that the trial court erred in finding that Andrade invoked his right to remain silent.
Undoubtedly, “an accused may end a custodial interrogation at any time by invoking his constitutional right to remain silent.” Barnes v. State, 287 Ga. 423, 425 (2) (696 SE2d 629) (2010). To do so, however, the defendant “must unambiguously and unequivocally express his desire to invoke that right.” Id. As explained by our Supreme Court:
There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously A requirement of an unambiguous invocation of Miranda rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult, decisions about an accused’s unclear intent and face the consequence of suppression if they guess wrong. Suppression of a voluntary confession in these circumstances would place a significant burden on society’s interest in prosecuting criminal activity. Treating an ambiguous or equivocal act, omission, or statement as an invocation of Miranda rights might add marginally to Miranda's goal of dispelling the compulsion inherent in custodial interrogation. But as Miranda holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process.
(Citation and punctuation omitted.) Id. at 425-426 (2).
The trial court suppressed Andrade’s incriminating statements after finding that Andrade “indicat[ed] on the video that he did not wish to speak with” the officer. According to the trial court, the officer “stated to [Andrade] in negative question form, words to the effect of — you don’t want to talk?,” to which Andrade “appeared to respond with voice and head gestures in the negative.” The video recording, however, belies these findings, which are thus clearly erroneous. The officer did not say anything resembling, “you don’t want to talk?” *231 Instead, he affirmatively asked Andrade whether he would give a statement, and Andrade offered unintelligible responses, until, on further clarification, he explicitly stated that he would speak with the officer.
The officer testified at the suppression hearing that Andrade never invoked his right to remain silent or indicated that he did not wish to talk with police. And Andrade admitted at the hearing that he agreed to speak with the officer. Although he vaguely asserted that at some point during his two interviews, he told the officer that he “wasn’t going to tell him, talk to him,” he offered no testimony establishing when he made this statement, the circumstances surrounding it, or whether it constituted an unambiguous invocation of his right to remain silent.
Simply put, the record reveals nothing that would “lead a reasonable police officer to understand that [Andrade] was exercising his right to remain silent.” Barnes, 287 Ga. at 425 (2). Neither the video nor Andrade’s testimony shows that he unambiguously and unequivocally invoked the right before making his incriminating statements. Instead, he signed a waiver of rights and, when asked whether he would make a statement, gave several unintelligible responses before stating, “yeah.” Thus, Andrade did not unambiguously and unequivocally invoke his right to remain silent. See id. at 426 (2) (“defendant’s statement that he should not talk in the absence of ‘real talk’ was insufficient to trigger the interrogating agent’s duty to cease questioning”); Perez v. State, 283 Ga. 196, 200-201 (657 SE2d 846) (2008) (“If Perez had truly intended to withdraw his waiver and invoke his right to remain silent, he would not have acquiesced in responding to the officer’s further questioning.”). But see State v. Nash, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005) (trial court properly found that defendant invoked his right to remain silent where defendant “shook his head in the negative when asked if he wanted to talk about the victim’s death and the questioning agent took [defendant’s] response to be a refusal to talk about the incident”).
Because there is no evidence that Andrade unambiguously and unequivocally invoked his right to remain silent, the trial court erred in suppressing his statements to police.

Judgment reversed.

Barnes, P. J., Ellington, P J., Dillard, P J., McFadden, P J., Ray, Branch and McMillian, JJ., concur. Miller, P. J., dissents.

 This Court initially dismissed the State’s appeal as untimely under OCGA § 5-7-1 (a) (5). On review, the Supreme Court of Georgia reversed, holding that the appeal was timely filed under OCGA § 5-7-1 (a) (4), and remanded the case to this Court to consider the merits. State v. Andrade, 298 Ga. 464 (782 SE2d 665) (2016).