**THIRD DIVISION**
**ELLINGTON, P. J.,**
**GOBEIL and COOMER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 19, 2018**

# In the Court of Appeals of Georgia

A18A1439. WALKER v. THE STATE.

ELLINGTON, Presiding Judge.

A Burke County jury found John Walker guilty beyond a reasonable doubt of possession of a knife during the commission of a crime involving the person of another, OCGA § 16-11-106 (b) (1); family violence battery, OCGA § 16-5-23.1 (a), (f); and cruelty to children in the third degree, OCGA § 16-5-70 (d). Following the denial of his motion for a new trial, Walker appeals, contending that the verdict must be set aside because it was based on perjured testimony. In addition, he contends that the evidence was insufficient to find that he possessed a knife during the offenses at issue, that the trial court erred in admitting his statement to investigators, and that the trial court erred in charging the jury regarding the elements of the offense of family violence battery. For the reasons explained below, we affirm.

1. Walker contends that the only evidence that he possessed a knife during a crime against a person, as charged, was the testimony of the battery victim, which she later testified had been a lie. He argues that, as a result, there was insufficient evidence to support a guilty verdict for possession of a knife during the commission of a crime. On appeal from a criminal conviction, the appellate court

> view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

The record in this case shows that, on the first day of Walker's trial, his children's mother testified that, during a prolonged violent attack on September 23, 2014, Walker slapped her face as she slept and then repeatedly struck her in the head and face, pulled a knife on her, and threatened to kill her. He repeatedly threatened to kill the children in front of her and held the knife to the baby's throat. The victim

2

testified that, as a result of the blows to her head, her eardrums were ruptured and she had a black eye, a split lip, and facial swelling. This beating was the culmination of four years of physical abuse which often included threats with weapons, with each attack being followed by a cooling off period and an apology from Walker. The victim testified that she stayed with Walker despite the abuse because she loved him and wanted the children to have their father. She also testified that she felt that she provoked Walker's abuse. The victim stated that she did not want to testify against Walker and was only in court because the police went and brought her in after she failed to report to court per the subpoena. She testified that prosecutors threatened to lock her up and put her children in foster care if she did not testify.

In addition to testimony from the victim, the jury heard evidence during the State's case-in-chief that the victim's five-year-old son witnessed part of the attack and that he reported to the school nurse, his classroom teacher, and a guidance counselor that Walker threw his mother against the wall and threatened to kill her. The State also introduced police photographs showing bruising and other injuries to the victim's face after the incident. Another witness testified that the victim sustained a black eye, a split lip, and other visible injuries.

Before court reconvened for the second day of the trial, the victim talked to

Walker's defense attorney and members of his family and decided to testify in Walker's defense. Upon being called by the defense, the victim testified that parts of her testimony on the first day of the trial had been a lie. She reiterated that she felt pressured to testify against Walker by threats that her children would be taken away from her if she changed her story from her pretrial statement. The victim confirmed that she woke up that day to Walker slapping her in the face, but she blamed a fistfight with another woman for the visible injuries to her face. She testified that her son who testified on the first day did see Walker hit her that day, but also testified that her son was a liar. She specifically denied that Walker had used a knife and threatened to kill her and the baby, and she stated that she did not want him prosecuted for that.

The jury's guilty verdicts show that the jury credited the victim's testimony and the corroborating evidence that Walker beat and threatened her and held a knife during the attack and show that the jury discredited the victim's contradictory testimony that someone else bruised her face and that Walker never pulled a knife on her.[1] Although the victim recanted parts of her inculpatory testimony the following

---

[1] See *Gibbons v. State*, 248 Ga. 858, 863 (286 SE2d 717) (1982) ("[T]he jury can determine whether to believe [a witness's] present testimony, the prior testimony – or neither."); *Pierre v. State*, 330 Ga. App. 782, 784 (769 SE2d 533) (2015) ("[A]

day while the trial was still in progress, the jury was authorized to find Walker guilty beyond a reasonable doubt of the crimes charged. *Pierre v. State*, 330 Ga. App. 782, 784 (1) (769 SE2d 533) (2015).

2. Walker contends that the verdict was based on the perjured testimony of the battery victim and must be set aside pursuant to OCGA § 17-1-4.[2] As the Supreme

---

jury is authorized to believe the victim's pre-trial statements rather than her in-court disavowal.") (footnotes and punctuation omitted); *Jones v. State*, 258 Ga. App. 852, 853-854 (576 SE2d 18) (2002) ("Even though a witness may recant on the stand, his prior inconsistent statements constitute substantive evidence on which the jury may rely." The resolution of conflict between a witness's prior statement and their trial testimony "is solely a jury issue.") (punctuation and footnotes omitted); see also *Logan v. State*, 265 Ga. App. 134, 135 (1) (593 SE2d 14) (2003) (Any conflict in a witness's testimony is a matter of credibility for the jury to resolve.); *Robinson v. State*, 246 Ga. App. 576, 577 (1) (541 SE2d 660) (2000) (accord).

[2] OCGA § 17-1-4 provides:
Any judgment, verdict, rule, or order of court which may have been obtained or entered shall be set aside and be of no effect if it appears that the same was entered in consequence of corrupt and willful perjury. It shall be the duty of the court in which the verdict, judgment, rule, or order was obtained or entered to cause the same to be vacated upon motion and notice to the adverse party; but it shall not be lawful for the court to do so unless the person charged with perjury shall have been duly convicted thereof and unless it appears to the court that the verdict, judgment, rule, or order could not have been obtained and entered without the evidence of the perjured person, saving always to third persons innocent of such perjury the rights which they may lawfully have acquired under the verdict, judgment, rule, or order before the same shall have been actually vacated.

5

Court of Georgia has explained,

> [g]enerally, a recantation of a witness' trial testimony [after judgment is entered] is merely impeaching of the trial testimony and does not establish a convicted defendant's right to a new trial, even if the witness states under oath that his prior trial testimony was false. . . . An exception to that rule is created when a trial witness is convicted of perjury with respect to his trial testimony and the trial court concludes that the guilty verdict could not have been obtained without the perjured testimony. The only other exception to the rule against setting aside a verdict based on a challenge to trial testimony is where there can be no doubt of any kind that the State's witness' testimony in every material part is purest fabrication. That exception is met when the witness' testimony is shown to be an impossibility.

(Citations and punctuation omitted.) *Lewis v. State*, 301 Ga. 759, 762-763 (2) (804 SE2d 82) (2017). See also *Fugitt v. State*, 251 Ga. 451, 452-453 (1) (307 SE2d 471) (1983) (considering OCGA § 17-1-4 in conjunction with former OCGA § 24-9-85[3]).

The record shows that the day after the trial court entered judgment in Walker's case, the State secured an indictment against the battery victim for two counts of perjury, alleging that she testified falsely on the first day of Walker's trial to the effect

---

[3] See former OCGA § 24-9-85 (b) (repealed effective January 1, 2013) ( "If a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence.").

that Walker threatened to kill her and the children and brandished a knife at her and that she testified falsely to the opposite effect on the second day of trial. The victim entered a negotiated guilty plea to the second count of perjury and received probation under the First Offender Act, OCGA § 42-8-60 et seq.

In this case, even treating her guilty plea and receipt of probation as a first offender as a conviction,[4] the victim pleaded guilty to committing perjury with respect to her *exculpatory* trial testimony, not her inculpatory testimony during the State's case-in-chief. Under the circumstances, the trial court could not conclude that the jury's guilty verdicts could not have been obtained without the victim's admittedly perjured exculpatory testimony for the defense. Conversely, stated in the positive, the trial court could only conclude that the guilty verdict could have been obtained without the perjured testimony. Walker contends, however, that OCGA § 17-1-4 speaks in terms of whether a verdict could have been obtained "without the evidence

---

[4] Under Georgia law,

[a] first offender's guilty plea does not constitute a "conviction" as that term is defined in the Criminal Code of Georgia. Rather, under the first offender statute, until an adjudication of guilt is entered, there is no conviction. The case has, in effect, been suspended during the period of probation until eventually the probation is either revoked or it is discharged; unless it is revoked, there is no conviction.

(Citations, punctuation, and emphasis omitted.) *Collins v. State*, 338 Ga. App. 886, 889 (1) (792 SE2d 134) (2016).

7

of the perjured *person*" (in this case, the victim), rather than in terms of the perjured *testimony* (in this case, the victim's exculpatory testimony) and, based on this, that there is no evidence that he possessed a knife. But, as quoted above, the Supreme Court has explained that the issue is whether the verdict could have been obtained without the perjured *testimony*. *Lewis v. State*, 301 Ga. at 762-763 (2). Because, in the words of the statute, the verdict in this case was not obtained "*in consequence of* corrupt and willful perjury,"[5] but rather *despite* the victim's perjury, OCGA § 17-1-4 does not provide a basis for setting aside the judgment in this case. *Nations v. State*, 290 Ga. 39, 41 (2) (717 SE2d 634) (2011); *Richardson v. Roberts*, 25 Ga. 671, 675 (1858).

3. Walker contends that he invoked his right to remain silent midway through a custodial interrogation and that the trial court therefore erred in admitting into evidence his statement that he held a knife during the incident.[6]

> In examining the operation of the Fifth Amendment's privilege against self-incrimination, the United States Supreme Court has made

---

[5] OCGA § 17-1-4 (emphasis supplied).

[6] The record shows that during his custodial statement Walker admitted that he slapped the victim and knew that it was wrong and said that he took a knife from her during the ensuing altercation in order to prevent her from committing suicide but stated that he put the knife down on the table as soon as he got it away from her.

clear that when an individual in custody indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point, that individual has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion. In this regard, [the Supreme] Court [of Georgia] has held that an assertion of the right to remain silent during custodial interrogation must be unambiguous and unequivocal before interrogators are required to stop their questioning. Resolution of that question depends on whether the accused articulated a desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. An accused will be found to have unambiguously and unequivocally asserted his right to remain silent where he declares that he is finished talking or otherwise expresses the clear desire for police questioning to cease.

(Citations and punctuation omitted.) *Mack v. State*, 296 Ga. 239, 242 (1) (765 SE2d 896) (2014).[7]

Walker points to the following colloquy during his custodial interrogation:

| Investigator A: | Do you wish to talk to us about what happened on the 23rd? |
| Walker: | Man. I don't know if I should talk . . . I don't want to commit myself at the same time. |

---

[7] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

9

| | |
|---|---|
| Investigator A: | It's totally up to you. |
| Investigator B: | It's totally up to you as far as you making a statement. |
| Walker: | I want to defend myself at the same time. |
| Investigator B: | Right. |
| Investigator A: | You can do that through your lawyer, if that's what you want. Or you can talk to us. |
| Investigator B: | It's totally up to you. We can't force you to answer questions. We can ask you questions. If you want to answer, you can answer. You don't have to answer, if you don't want to, if it's something you don't want to answer. But we're just here to try to get your side of what happened and go from there. |
| Walker: | I ain't trying to get in no trouble, sir. |
| Investigator B: | Well, we understand that. Most people don't try to get in trouble, but things happen that lead to trouble. |
| Walker: | Yes, sir. |

Having reviewed the recording, we discern no declaration that Walker was finished talking or other expression of the clear desire for police questioning to cease. *Williams v. State*, 290 Ga. 418, 420 (2) (721 SE2d 883) (2012) (An arrestee's statement "'I can't go on answering these questions' was not an unambiguous and unequivocal assertion of the right to remain silent."); *Perez v. State*, 283 Ga. 196, 200-201 (657 SE2d 846) (2008); *State v. Andrade*, 342 Ga. App. 228, 231 (803 SE2d 118) (2017). Accordingly, Walker has shown no basis for reversal.

4. Walker contends that the trial court's jury instructions failed to include all of the elements of the offense of family violence battery as charged, specifically the

10

definition of "visible bodily harm" under OCGA § 16-5-23.1.

Because Walker made no objection at the time of the charge, we review this claim of error under the "plain error" standard of review. *Hughley v. State*, 330 Ga. App. 786, 788 (2) (769 SE2d 537) (2015).[8] Walker has the heavy burden of demonstrating the following four elements:

> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

---

[8] The State contends that, because Walker "never argued that the trial court's failure to charge on the definition of battery was plain error," this Court is "preclud[ed] from passing on this issue now[,]" citing *State v. Easter*, 297 Ga. 171 (773 SE2d 181) (2015). This argument is disingenuous at best. As explained in *State v. Easter*, the appellate court is "required to consider whether the [trial] court's jury instruction constitutes plain error" where the appellant "properly enumerate[s] and argue[s] the issues on appeal." (Citation and punctuation omitted.) 297 Ga. at 173 (1). Although Walker did not expressly refer to the plain-error standard of review in his enumeration of errors, he did refer to it in his brief when listing the standards of review and in the argument section of his brief.

11

(Citation, punctuation and footnote omitted.) Id. at 789 (2).

The indictment charged that Walker committed family violence battery by intentionally causing the victim "visible bodily injury" by slapping and hitting her. OCGA § 16-5-23.1 (a) provides: "A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-23.1 (f) defines "family violence battery," inter alia, as the offense of battery committed between "persons who are parents of the same child." OCGA § 16-5-23.1 does not define "substantial physical harm" but in subsection (b) defines "visible bodily harm" as "bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts."

> The trial court charged the jury as follows:

> [Walker] is . . . charged with family violence. I charge you that the Official Code of Georgia defines family violence as meaning the occurrence of one or more of the following acts between persons who are the parents of the same child: any felony or commission of offense of battery. . . . [I]t's alleged that Mr. Walker committed the crime of family violence battery, a misdemeanor, for that [he] . . . did intentionally cause physical bodily injury to [the victim], who has a

12

child with the accused, by slapping and hitting [the victim.]

The trial court did not define "battery" or "visible bodily harm."

Because Walker was charged with committing the offense of family violence battery by causing "visible bodily injury," the court misspoke when it instructed the jury that Walker was charged with committing the offense by cause "physical bodily injury." This flaw was ameliorated by the fact that the court instructed the jury that it was authorized to find Walker guilty only if it found beyond a reasonable doubt that he committed the offense as charged in the indictment and sent both the indictment and the instructions out with the jury. In addition, because the Criminal Code provides a definition of "visible bodily harm," it is preferable to charge the jury as to that definition, as in the pattern instructions.[9] Having reviewed the entire record, however, we do not find it likely that these technical errors and omissions affected the outcome of the trial court proceedings. *Hornbuckle v. State*, 300 Ga. 750, 755 (4) (797 SE2d 113) (2017); *Christensen v. State*, 245 Ga. App. 165, 166 (1) (a) (537 SE2d 446) (2000); see *Green v. State*, 291 Ga. 287, 294 (8) (a) (728 SE2d 668) (2012) ("The general rule . . . is that the existence of a mere verbal inaccuracy in a

_____

[9] See *Suggested Pattern Jury Instructions*, Vol. II: Criminal Cases, 2.22.11 (4th ed., 2007, updated August 2018).

13

jury instruction, resulting from a palpable 'slip of the tongue' and which could not have misled or confused the jury will not provide a basis for reversal of a defendant's conviction.") (citation and punctuation omitted). Because Walker failed to establish all four prongs of the applicable test for plain error, we affirm.

*Judgment affirmed. Gobeil and Coomer, JJ., concur.*